IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CAROL J. PRICE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 12-2239-JWL |
| CAROLYN W. COLVIN,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding error in the Commissioner's step four evaluation, the court ORDERS that the decision shall be REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

**I.    Background**

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for SSD, alleging disability beginning December 20, 2003. (R. 22, 125-27). At a disability hearing before an Administrative Law Judge (ALJ) Plaintiff amended her alleged onset date to August 15, 2003. (R. 22, 32-33). In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. She alleges the ALJ erred in evaluating steps two and three of the Commissioner's five-step sequential evaluation process; erred in several respects in assessing her residual functional capacity (RFC); erred in evaluating the demands of her past relevant work; and denied her the benefit of a full and fair hearing.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the

3

economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the ALJ erred in his step four evaluation. The court will not address Plaintiff's allegations of error at steps two and three of the evaluation process or in the RFC assessment, and she may make these arguments to the Commissioner on remand. Because Plaintiff's allegation regarding the denial of a full and fair hearing suggests a constitutional deprivation, the court addresses that issue but finds no deprivation.

## II.   Denial of a Full and Fair Hearing

Plaintiff asserts that at one point in the hearing before the ALJ, the "ALJ stated that he would not allow counsel to question plaintiff about her headaches and was only going to allow five more minutes of testimony, to include the full testimony of plaintiff's husband, as [the ALJ] had another case and he 'had all the information he needed from' plaintiff." (Pl. Br. 22) (apparently quoting without citation the ALJ's statement). She claims that the transcript of the hearing inexplicably "SKIPPED" a substantial portion of the hearing which included this exchange, that the ALJ's denial of the opportunity to

4

continue questioning Plaintiff constitutes a denial of the right to a full and fair hearing, and that although she made this argument to the ALJ at the conclusion of the hearing, he merely "responded that the record was closed." Id. (citing (R. 65)).

Along with her response brief, the Commissioner filed a "Supplemental Court Transcript" which contains a transcript of the hearing before the ALJ and includes a transcription of most if not all of the portions of the hearing which were "SKIPPED" in the original transcript. (Comm'r Br.) (Doc. 19 & Attach. 1). The Commissioner argues that although the ALJ stopped Plaintiff's testimony, he allowed Plaintiff's husband to testify thereafter and allowed ample time for Plaintiff to present her case. (Comm'r Br. 18-19). Consequently, she argues, Plaintiff received a full and fair hearing. Id.

The Supreme Court has recognized the intent of Congress that the Commissioner establish hearing procedures which are "fundamentally fair," and that regulations furthering that intent have been promulgated which allow liberal admission of pertinent evidence and place the conduct of the hearing within the ALJ's discretion. Perales, 402 U.S. at 400-01. Here, the ALJ began by questioning Plaintiff regarding her condition, and he provided a thorough inquiry spanning twenty-five pages of the record in which he frequently received clarification and assistance from Plaintiff's counsel. (R. 444-68). He then turned the questioning over to Plaintiff's counsel. (R. 469). After additional inquiry spanning the greater part of four pages, the ALJ asked counsel how much more she had, counsel responded, "Not much," and the ALJ instructed her to "Be brief." (R. 473). The record however, does not reveal any particular change in the brevity of counsel's inquiry

5

thereafter. She completed her inquiry regarding Plaintiff's workplace symptoms and then discussed Plaintiff's treatment with Dr. Burns and what Plaintiff discussed during her treatment with Dr. Burns. Id. 473-74. When counsel began another new line of questioning, the ALJ interrupted, and the following colloquy ensued:

Q: Tell us just a little about the headaches and how - -

ALJ: No, ma'am.

Atty: Okay.

ALJ: No, ma'am.

Atty: All right.

ALJ: Did you want her husband to testify?

Atty: Yes.

ALJ: Well, we've got about five minutes.

Atty: Okay.

ALJ: And, and I have another case in this courtroom.

Atty: Okay.

ALJ: And I think I have all of the information that's relevant to this case, ma'am.

Atty: Okay. Do you want me to go get her husband, then?

ALJ: Yes, ma'am.

(R. 474-75).

Thereafter, the record reveals four pages of testimony by Plaintiff's husband at the inquiry of the ALJ and four pages of testimony at the inquiry of Plaintiff's counsel. (R.

6

475-82). At that point the ALJ began an examination of the vocational expert. (R. 483-87). As Plaintiff's brief notes, counsel addressed the perceived denial of a full hearing at the end of the hearing:

> Atty: Your Honor, I would just simply state that I know that you're under time constraints and have another hearing, and I don't know what kind of, you know, limits the Administration puts on you; but I feel that we've had to push this hearing, and she's, my client's, waited three years for a hearing, and I just think, when it's this important, and she has a date last insured issue, that we should be allowed to put on full testimony.
>
> ALJ: You were, and that's all I have to say. Let's close the record.

(R. 488-89).

While it is clear that counsel would have liked to have had more time to question Plaintiff, it is equally clear that the ALJ believed that the testimony was sufficient to provide him "all the information that's relevant to this case," and that Plaintiff was, in fact, allowed to put on full testimony. (R. 474, 489). Moreover, neither at the hearing nor in her briefing before this court did counsel suggest what testimony was not presented, or what material effect that testimony would have on the decision in this case. Therefore, counsel appears to be arguing that the mere fact that she was not allowed to question Plaintiff as long as she desired constitutes denial of a full and fair hearing. That is not the law, and Plaintiff does not cite any authority for such a proposition. The conduct of a hearing is within the sound discretion of the ALJ, and Plaintiff has shown no abuse of that discretion in this case. While the ALJ might have been more instructive in providing reasons for stopping the questioning, Plaintiff has shown no prejudice.

7

In her Reply Brief, Plaintiff implies that the "SKIPPED" portions of the original transcript were intentionally not transcribed in the administrative record first filed, as may be evidenced by the fact that the Commissioner was able to transcribe those portions in the "Supplemental Court Transcript" filed with her Response Brief. (Reply 19-20). She argues that the Commissioner is required to explain why portions of the hearing transcript were "SKIPPED," "and the steps she has taken to ensure [this error] is not repeated in future cases." Id. at 20.

Plaintiff cites no authority for the proposition asserted, and the court is aware of none. Moreover, Plaintiff does not point to any evidence that the agency was intentionally skipping portions of the hearing to prevent the court from discerning the activities of the ALJ during the hearing. The fact that the Commissioner voluntarily secured a second transcription of the hearing suggests the opposite. To be sure, the court has never before seen the annotation "SKIPPED" used in a Social Security Administration (SSA) hearing transcript to indicate that a portion of the hearing was not transcribed. The court is familiar with the annotation "INAUDIBLE" used where the transcriber is unable to clearly hear a portion of the recording. Nevertheless, the court is also aware that the SSA uses electronic filing of its records, and that those records are stored on computer discs. Therefore, the court can imagine that when the hearing was being transcribed from such a disc, it was apparent to the transcriber that there was a break in the continuity of the recording, amounting to a "skipped" portion of the hearing.

The court does not need to know with certainty what the annotation means because Plaintiff does not cite evidence suggesting a nefarious purpose or intent.

## III. The Step Four Evaluation

Plaintiff claims the ALJ erred in his step four evaluation because he did not identify the physical or mental demands of Plaintiff's past relevant work as a receptionist and did not ask the vocational expert (VE) to do so. (Pl. Br. 20-22) (citing Winfrey v. Chater, 92 F.3d 1017, 1023-26 (10th Cir. 1996)). The Commissioner argues that contrary to Plaintiff's assertion, "the vocational expert testified regarding the physical and mental demands of [Plaintiff's] past work," stating that work as a receptionist is typically performed at the sedentary level, and was a semi-skilled job with a specific vocational preparation (SVP) of 4. (Comm'r Br. 15) (citing R. 484). She argues that the "ALJ's discussion of the vocational expert's testimony satisfied the requirement to compare a claimant's RFC to the physical and mental demands of the claimant's past relevant work" (Comm'r Br. 16), and that because Plaintiff can "perform the job as receptionist as generally performed in the national economy, the ALJ properly found that she was not disabled at step four." Id. at 17.

### A. The Step Four Standard

At step four of the sequential evaluation process, the ALJ is required to make specific findings in three phases. Winfrey, 92 F.3d at 1023 (citing Soc. Sec. Ruling (SSR) 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings 809 (1983)). In phase one, "the ALJ should first assess the nature and extent of [the claimant's] physical

9

limitations." Winfrey, 92 F.3d at 1023. In phase two, the ALJ must "make findings regarding the physical and mental demands of the claimant's past relevant work." Winfrey, 92 F.3d at 1024. Finally, in phase three, the ALJ must determine "whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." Id., 92 F.3d at 1023. These findings are to be made on the record by the ALJ. Id. at 1025; see also, SSR 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings, at 813 ("decision must contain . . . specific findings of fact" regarding each of the three phases).

The Tenth Circuit has explained that an ALJ may properly rely upon VE testimony in making his findings at phase two and phase three of step four. Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003). He may not, however, delegate the step-four analysis to the VE. Nevertheless, he may rely on information supplied by the VE regarding the demands of plaintiff's past relevant work and whether a person with plaintiff's RFC could meet those demands, and he may accept the VE's opinions. Doyal, 331 F.3d at 761. The critical distinction is whether the ALJ relied upon the VE testimony in making the findings or whether the ALJ delegated the phase two and phase three findings to the VE. Id. 331 F.3d at 761. Where the ALJ made the phase two and phase three findings and merely quoted the VE testimony approvingly in support of those findings, he has properly relied upon the VE testimony. Id.

**B.      Analysis**

The court agrees with Plaintiff that the decision in this case reveals that the ALJ merely delegated the phase two and three findings to the VE and did not make specific on-the-record findings. The best demonstration of that fact begins with looking at the ALJ's step-four analysis in its entirety:

> 7. **The claimant can return to her past relevant work as a receptionist. (20 CFR 404.1565).**
>
> With regard to opinions and reports from treating and examining physicians and third parties, the record is relatively consistent with the claimant's ongoing ability to perform a limited range of sedentary work.
>
> The vocational expert testified at the hearing that the claimant has performed past relevant work as a semi-skilled job placement specialist at the sedentary exertional level; semi-skilled receptionist at the sedentary exertional level; and semi-skilled server/hostess at the light exertional level. The claimant obtained transferable skills from the receptionist job as it is considered to be an information providing industry. The claimant could transfer her job skills to the following jobs: information clerk; appointment clerk; dispatcher; and telephone operator. Pursuant to SSR 00-4p, the vocational expert's testimony is based on years of experience as a vocational counselor and is in conformity with the Dictionary of Occupational Titles and its companion publication, the Selected Characteristics of Occupations.
>
> 8. **The Vocational Expert testified that the claimant could return to her past relevant work as a receptionist.**
>
> Based on the credible vocational expert testimony, the undersigned concludes that the claimant is capable of returning to her past relevant work. A finding of "not disabled" is therefore appropriate.

(R. 27).

As this quotation reveals, the ALJ merely summarized the testimony of the vocational expert and stated the conclusion that Plaintiff can return to her past relevant

work as a receptionist "[b]ased on the credible vocational expert testimony." Moreover, in his summary of the expert's testimony regarding past relevant work, the ALJ said nothing to distinguish between past relevant work as a job placement specialist, a receptionist, or a server/hostess, or to explain that the testimony regarding work as a receptionist was particularly relevant to the discussion at hand. For all the decision reveals, the ALJ delegated the step four determination to the vocational expert, and merely repeated that determination in his decision. That is error requiring remand for a proper step four analysis.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 7th day of February 2014, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**